# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

WEBSTER SALASKER LUCAS,

            Petitioner,

         v.

MATTHEW MARTEL, Warden,

          Respondent.

Case No. CV 09-2782-ABC (CT)

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE ON
PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

This report and recommendation is submitted to the Honorable Audrey B. Collins, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that the petition be denied and dismissed with prejudice.

## PROCEEDINGS

On April 22, 2009, Webster Salasker Lucas ("petitioner"), proceeding pro se, filed a petition for writ of habeas corpus by a person in state custody ("petition"). On September 2, 2009, Matthew Martel ("respondent") filed an answer to the petition. On September

1 | 23, 2009, petitioner filed a reply.

2

3 | **BACKGROUND**[1]

4 |     Petitioner was charged under California law with, among other

5 | things, three counts of possession of a forged driver's license.

6 | (Lodged Document 2). The information also alleged that the petitioner

7 | had previously suffered three "strikes" under California's Three

8 | Strikes Law and that he had served three prior prison terms. (<u>Id.</u>).

9 | On April 2, 2008, pursuant to a plea bargain, petitioner pleaded

10 | guilty to one count of possessing a forged license and admitted that

11 | he had suffered one prior strike. (Lodged Document 3 at 9). He was,

12 | thereafter, sentenced to two years and eight months in state prison.

13 | (Lodged Document 4 at 2-3).

14 |     Subsequently, on May 21, 2008, petitioner filed a notice of

15 | appeal in Los Angeles Superior Court. After construing the notice of

16 | appeal as a request for certificate of probable cause, the superior

17 | court denied the request. Next, petitioner filed a petition for writ

18 | of habeas corpus in the California Court of Appeal. On October 7,

19 | 2008, the court of appeal denied the petition without comment.

20 | Petitioner then filed a petition for writ of habeas corpus in the

21 | California Supreme Court. The California Supreme Court denied the

22 | petition without comment on March 18, 2009.

23 |     On April 22, 2009, petitioner filed this petition.

24 | ///

25 | ///

26 | ///

27 | _____

28 |   [1] Proceedings not relevant to this federal petition have not been summarized here.

1

### FACTUAL SUMMARY

Essentially, the testimony adduced at the preliminary hearing[2] in petitioner's case shows that petitioner masterminded a scheme to use fraudulent identifications to purchase goods.  As part of this scheme, he blackmailed a longtime associate into assisting petitioner with the scheme.   The associate was apprehended, however, and thereafter informed police of petitioner's plan.   Police subsequently arrested petitioner when he contacted his accomplice.   When he was arrested, petitioner was carrying several counterfeit licences and corresponding social security cards.

### PETITIONER'S GROUNDS FOR RELIEF

Petitioner essentially raises the following grounds for relief in his petition:

1.   Petitioner did not voluntarily plead guilty to the crimes with which he was charged because he pleaded guilty only after learning that the judge was biased against him.

2.   Petitioner was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel purportedly committed the following errors:

   a.   Counsel told petitioner that he believed petitioner was guilty and advised petitioner not to cooperate with a law enforcement investigation into another crime.

   b.   Counsel failed to challenge the charge against petitioner for displaying a licence with intent to commit a forgery.

### STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment shall not be granted

---

[2] (See Lodged Doc. 1).

1  with respect to any ground that was adjudicated on the merits in state
2  court proceedings unless the adjudication of the ground either:    (1)
3  resulted in a decision that was contrary to, or involved an
4  unreasonable application of, clearly established federal law, as
5  determined by the United States Supreme Court; or, (2) resulted in a
6  decision that was based on an unreasonable determination of the facts
7  in light of the evidence presented in the state court proceedings.  28
8  U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death
9  Penalty Act of 1996 ("AEDPA")); see also Williams v. Taylor, 529 U.S.
10 362, 412 (2000) ("[section] 2254(d)(1) places a new constraint on the
11 power of a federal habeas court to grant a state prisoner's
12 application for a writ of habeas corpus with respect to claims
13 adjudicated on the merits in state court").

14      A state court decision is "contrary to" the Supreme Court's
15 clearly established precedents if it "applies a rule that contradicts
16 the governing law set forth" in the Supreme Court's cases or if it
17 "confronts a set of facts that are materially indistinguishable from
18 a decision of [the Supreme Court] and nevertheless arrives at a result
19 different from [the Supreme Court's] precedent." Early v. Packer, 537
20 U.S. 3, 8 (2002).  State court decisions that are not contrary to
21 clearly established Supreme Court precedent warrant federal habeas
22 relief "only if they are not merely erroneous, but 'an unreasonable
23 application' of clearly established federal law, or based on 'an
24 unreasonable determination of the facts.'" Id. at 11.  A state court
25 decision is an "unreasonable application of" the Supreme Court's
26 clearly established precedent if it "correctly identifies the
27 governing legal rule but applies it unreasonably to the facts" of the
28 case. Penry v. Johnson, 532 U.S. 782, 792 (2001).

1    The United States Supreme Court has held that "[w]here there has

2 been one reasoned state judgment rejecting a federal claim, later

3 unexplained orders upholding that judgment or rejecting the same claim

4 rest upon the same ground." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803

5 (1991).   Where applicable, and in accordance with <u>Ylst</u>, this court

6 looks through the California Supreme Court's unexplained orders to the

7 last reasoned state decision on the relevant issues.

8

9                              **DISCUSSION**

10   **I.    Exhaustion**

11    Respondent contends that petitioner has not exhausted his first

12 and third grounds for relief.  In those grounds, petitioner

13 challenges the voluntariness of his guilty plea.  The grounds are

14 unexhausted, according to respondent, because petitioner never

15 challenged the guilty plea in state on federal grounds, as he does

16 in this petition.  Instead, he challenged his guilty plea in state

17 court on only state grounds.

18    "Before a federal court may grant habeas relief to a state

19 prisoner, the prisoner must exhaust his remedies in state court.   In

20 other words, the state prisoner must give the state courts an

21 opportunity to act on his claims before he presents them to a

22 federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526

23 U.S. 838, 842 (1999).

24    A ground for relief has not been fairly presented unless the

25 prisoner has described in the state court proceedings <u>both</u> the

26 operative facts and the federal legal theory on which the ground is

27 based.  See <u>Duncan v. Henry</u>, 513 U.S. 364 (1995).  In the Ninth

28 Circuit, the petitioner must reference specific provisions of the

federal constitution, federal statute or federal case law. <u>Lyons v.</u>
<u>Crawford</u>, 232 F.3d 666 (9th Cir. 2000), <u>amended</u>, 247 F.3d 904 (9th
Cir. 2001).  However, citation to a state case analyzing a federal
issue serves the same purpose as a citation to a federal case
analyzing that issue. <u>Peterson v. Lampert</u>, 319 F.3d 1153 (9th Cir.
2003)(<u>en banc</u>); <u>but</u> <u>see</u> <u>Fields v. Waddington</u>, 401 F.3d 1018, 1022
(9th Cir.)(mere citation to state court case that engages in both
state and federal constitutional analysis insufficient); <u>Casey v.</u>
<u>Moore</u>, 386 F.3d 896, 912-13 n.13 (9th Cir. 2004) (citation to state
case discussing both state and federal claims, with no textual
mention of federal ground in petitioner's brief, did not fairly
present ground to state court).

Here, it does not appear that petitioner fully exhausted his
state court remedies as to his challenges to his plea agreement.
Although he challenged the voluntariness of the plea in the
California Supreme Court, he did not cite a constitutional basis for
his challenge.  Nor does his state habeas petition contain any
textual mention of the federal nature of the challenge.

Nevertheless, the court will address petitioner's challenges to
his guilty plea on the merits.  As explained below, those challenges
lack merit. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Cassett v. Stewart</u>, 406
F.3d 614, 623-24 (9th Cir. 2005) (court has authority to deny
petition containing both exhausted and unexhausted grounds for
relief where it is clear that petition does not raise a colorable
federal ground for relief).

///

///

///

6

## II.   Grounds One and Three: Petitioner's Guilty Plea

In his first and third grounds for relief, petitioner contends that his guilty plea was involuntary and, as such, he should be able to withdraw the plea.  According to petitioner, he pleaded guilty only because his trial counsel advised him that the trial judge believed petitioner was a "con-man."

A guilty plea that is not made voluntarily and knowingly violates due process.  See Boykin v. Alabama, 395 U.S. 238, 243, n. 5 (1969).  A plea is void if it is induced by promises or threats which deprive it of the nature of a voluntary act.  Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986); see also Sanchez v. United States, 50 F.3d 1448, 1454 (9th Cir. 1995) ("A guilty [or no contest] plea is void if it was 'induced by promises or threats which deprive it of the character of a voluntary act.'").  To determine voluntariness, a reviewing court examines the totality of circumstances surrounding the plea.  See Brady v. U.S., 397 U.S. 742, 749 (1970).

Here, the state courts did not commit constitutional error in rejecting petitioner's challenge to the voluntariness of his plea. The transcript of petitioner's plea colloquy shows that petitioner pleaded guilty only after adequately consulting with his attorney. Equally important to resolving the precise nature of petitioner's challenges, however, is his statement that he had not been threatened into pleading guilty and that he was pleading guilty "freely and voluntarily."  (Lodged Document 3 at 8).

Moreover, petitioner's assertion that the trial judge was biased against him is unpersuasive.  As an initial matter, the court notes that nothing, other than petitioner's self-serving statements,

7

1 supports his contention that the trial court believed petitioner was

2 a "con-man." But even if the trial court harbored and vocalized

3 this belief, such a belief would not establish bias. To succeed on

4 a judicial bias claim, the petitioner must "'overcome a presumption

5 of honesty and integrity in those serving as adjudicators.' Withrow

6 v. Larkin, 421 U.S. 35, 47." Larson v. Palmateer, 515 F.3d 1057,

7 1067 (9th Cir. 2008). Consequently, "[i]n the absence of any

8 evidence of some extrajudicial source of bias or partiality, neither

9 adverse rulings nor impatient remarks are generally sufficient to

10 overcome the presumption of judicial integrity, even if those

11 remarks are 'critical or disapproving of, or even hostile to,

12 counsel, the parties, or their cases.'" Liteky v. United States,

13 510 U.S. 540, 555 (1994). As the Supreme Court has explained,

14 "opinions formed by the judge on the basis of facts introduced or

15 events occurring in the course of the current proceedings, or of

16 prior proceedings, do not constitute a basis for a bias or

17 partiality motion unless they display a deep-seated favoritism or

18 antagonism that would make fair judgment impossible." Id. at 555.

19     Here, even assuming the trial judge made the statement about

20 petitioner, nothing suggests that the judge's impression of

21 petitioner was derived from an extrajudicial source. Accordingly,

22 the trial court was not biased against petitioner.

23     Habeas relief is not warranted with respect to petitioner's

24 first and third grounds for relief.

25 ///

26 ///

27 ///

28 ///

8

### III. Ground Two: Trial Counsel's Performance

In his second ground for relief, petitioner contends that his trial counsel rendered constitutionally deficient performance. Specifically, petitioner faults his counsel for harboring a belief that petitioner was guilty and for criticizing petitioner for cooperating with police in an investigation into another crime and for advising petitioner not to cooperate. Petitioner also faults his counsel for failing to challenge the charge against petitioner for displaying a licence with intent to commit a forgery. Although petitioner does not deny possessing the licence, he maintains that he never displayed it and, thus, could not have been convicted of that crime.

A two-step analysis governs petitioner's ineffective assistance of counsel grounds for relief. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, petitioner must prove that his attorney's representation fell below an objective standard of reasonableness. Id. at 687-88, 690. In order to establish this, petitioner must identify the acts or omissions that rendered the representation objectively unreasonable. Id. at 690. Second, petitioner must show that he was prejudiced by demonstrating a reasonable probability that, but for his counsel's errors, the result would have been different. Id. at 687, 694. Petitioner must prove both elements. The court may reject an ineffective assistance of counsel ground for relief upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. Id. at 697.

Generally, when a defendant's trial counsel makes an informed strategic decision, a court should not second-guess that decision. See id. at 691 ("[S]trategic choices made after thorough

1 | investigation of law and facts relevant to plausible options are
2 | virtually unchallengeable."). Indeed, as the Ninth Circuit has
3 | noted, "[a] reasonable tactical choice based on an adequate inquiry
4 | is immune from attack under Strickland." Gerlaugh v. Stewart, 129
5 | F.3d 1027, 1033 (9th Cir. 1997).

6 | Here, the state courts did not commit constitutional error in
7 | rejecting petitioner's challenges to his counsel's performance.
8 | First, irrespective of counsel's belief as to petitioner's guilt,
9 | nothing suggests that counsel's belief impacted his representation
10 | of petitioner. Likewise, nothing suggests that counsel's opinion as
11 | to plaintiff's option of cooperating with law enforcement adversely
12 | affected counsel's performance. And to the extent that counsel
13 | concluded that cooperation would not be beneficial to petitioner,
14 | that conclusion represents the result of an informed, strategic
15 | decision. As such, the court is not inclined to second-guess it.
16 | See Strickland, 466 U.S. at 691 (supra).[3]

17 | Second, counsel did not act deficiently in refusing to
18 | challenge the charge involving petitioner's possession of a licence
19 | with intent to defraud. Although petitioner asserts that no
20 | evidence suggests he ever "displayed" the license, the charge was
21 | for possessing or displaying a licence, not solely with displaying

22 |
23 |
24 |
25 |
26 |
    [3] The court notes that no evidence, other than petitioner's
27 | account, supports the notion that petitioner's counsel harbored any
of the beliefs or opinions that petitioner attributes to him. But
28 | irrespective of this, as explained above, nothing suggests these
purported beliefs or opinions impacted counsel's performance.

the license.  <u>See</u> Cal. Penal Code § 470B.[4]  And on the issue of
possessing the license, the evidence against petitioner was strong.
Indeed, when he was apprehended by police, petitioner had a
briefcase containing several counterfeit licences and corresponding
social security cards.  (Lodged Doc. 1 at 21-23).  As such, trial
counsel did not act deficiently by opting against challenging the
charge, as that challenge was doomed to failure.  <u>James v. Borg</u>, 34
F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile
motion does not constitute ineffective assistance of counsel.").

Finally, assuming without deciding that petitioner could
establish deficient performance - which he cannot - petitioner
suffered no cognizable prejudice as a result.  In challenges to
counsel's performance relating to guilty pleas, the petitioner must
show that there is a reasonable probability that, but for counsel's
errors, the petitioner would not have pleaded guilty and would have
insisted on going to trial.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59
(1985).

Here, no such showing can be made.  The evidence establishing
petitioner's guilt was overwhelming.  As discussed above,

----

[4]  The statute under which petitioner was charged reads as
follows:

> Every person who displays or causes or
> permits to be displayed <u>or has in his
> possession</u> any driver's license or
> identification card of the type enumerated in
> Section 470a with the intent that such
> driver's license or identification card be
> used to facilitate the commission of any
> forgery, is punishable by imprisonment in the
> state prison, or by imprisonment in the
> county jail for not more than one year.

Cal. Penal Code § 470B (emphasis added).

investigating officers recovered several counterfeit licences and corresponding social security cards from petitioner.  (Supra). Petitioner also admitted that he was aware of the fraudulent scheme and transactions at issue.  (Lodged Doc. 1 at 18-19).  Furthermore, petitioner's unwilling accomplice informed police that petitioner had threatened to expose the accomplice's extramarital affair if the accomplice did not assist petitioner in perpetrating the fraudulent scheme.  (Id. at 9-14).  And in light of petitioner's criminal history, he faced a possible twenty-five years to life sentence for his crimes.  But by following his counsel's advice and pleading guilty, petitioner avoided this harsh sentence and was, instead, sentenced only to two years and eight months.  Indeed, during his plea colloquy, petitioner himself agreed that pleading guilty was in his "best interests."  (Lodged Doc. 3 at 8).  Given this record, petitioner suffered no prejudice from any purported error on counsel's part.

Habeas relief is not warranted with respect to petitioner's second ground for relief.

## CONCLUSION

After independent review of the record and looking through the California Supreme Court's silent denial on the grounds raised in this petition, this court finds that the California courts' adjudication of the grounds for relief raised by petitioner did not involve an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and was not contrary to, or an unreasonable application of, clearly established ///

federal law, as determined by the United States Supreme Court.  As
a result, habeas corpus relief is not warranted.

### RECOMMENDATION

In accordance with the foregoing, it is recommended that the
court issue an order:  (1) approving and adopting this report and
recommendation;  and (2) directing that judgment be entered denying
the petition and dismissing this action with prejudice

DATED:  9/28/09

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

NOTICE
Reports and recommendations are not appealable to the Court of
Appeals, but may be subject to the right of any party to file
objections as provided in the Local Rules governing the duties of
Magistrates and review by the District Judge whose initials appear
in the docket number.  No notice of appeal pursuant to the Federal
Rules of Appellate Procedure should be filed until entry of judgment
of the district court.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WEBSTER SALASKER LUCAS,                )
                    Petitioner,        )      CASE NO.   CV 09-2782-ABC (CT)
        -VS-                           )
MATTHEW MARTEL, Warden,                )
                    Respondent.        )
                                       )

ORIGINAL

PETITIONER'S REPLY TO RESPONDENT'S ANSWER

Mr. Webster S. Lucas  #D-05608
C.R.C. - 311 - 43-Low
P.O.  Box  3535
Norco, California  92860

                In Pro Per /



Mr. Webster S. Lucas  #D-05608
C.R.C.  -  311  -  43-Low
P.O. Box 3535
Norco, California    92860

   In Pro Per  /

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WEBSTER SALASKER LUCAS,    )
                      )
            Petitioner,   )   CASE NO.  CV 09-2782-ABC (CT)
                      )
   -VS-               )   PETITIONER'S REPLY TO RESPONDENT'S
                      )   ANSWER:
MATTHEW MARTEL, Warden,     )
                      )
           Respondent.   )
_____)

BEFORE:  Honorable Ms. Audrey B. Collins and magistrate judge Ms. C. Turchin;

    PETITIONER, Webster Salasker Lucas , hereby replies to the respondent's answer to Petitioner's Petition for writ of Habeas Corpus and denies every allegation set forth therein and petitioner realleges as follows;

  1.  That petitioner in fact suffered judicial misconduct where the judge told petitioner public defender Mr. R. Takasugi that she "Feels that petitioner is a [con-man]" prior to petitioner making up his mind to accept the plea which inter alia, assisted the reluctant encouragement of petitioner's choice;

  2.  That petitioner in fact suffered ineffective assistance of counsel where counsel informed petitioner at an early stage of the proceedings, "that

1.



counsel was uncomfortable with the petitioner's case because it involves peti-

tioner assisting law enforcement with information (snitching, as he called it)",

and counsel's failure to discuss any possibilities of defending petitioner at

a trial by jury, i.e., counsel could have proved to the jury that petitioner

was working for law enforcement and that the co-defendant GOMEZ was lying on

several if not all accounts of his involvement, and counsel could have proved

to the jury that petitioner was not guilty of displaying a forged license with

intent to commit a forgery, [See attached Exhibit "A"];

3.  That petitioner is entitled to withdraw his plea;

## ARGUMENT

### 1.

### PETITIONER SUFFERED JUDICIAL MISCONDUCT WHERE THE JUDGE TOLD COUNSEL FOR PETI- TIONER THAT "THE JUDGE FEELS THAT THE PETITIONER IS A CON-MAN:"

The respondent is under the impression that because petitioner may not

have cited federal authorities in his first argument, that petitioner is not

entitled to federal review. To the contrary, where the state courts of appeal

had an opportunity to review the petition, but for whatever reason(s), chose

not to address the merits of said petition's grounds .... the absence of any

comment or citation of authority(s) clearly constitute a denial on the merits

and as to this ground, petitioner has completely exhausted his claims in every

state court including the Sentencing court, Court of appeal and our California

Supreme Court, **Gaston vs. Palmer**, (9th Cir. 2005) 417 F. 3d 1030, 1038, hence,

the respondent's assumption based on exhustion as to ground one must fail; as


EXHIBIT

this court stated in a minute order that it does not see an issue as to whether

petitioner has exhausted his grounds, and this court ordered the Attorney

General to answer the merits of the petition and not to file a motion to

dismiss, thus, and again, respondent's position must fail. Reaching the merits,

in any event, the respondent cites **Castillo vs. McFadden**, (9th Cir. 2005) 399

F. 3d 993, 999, 1003, which holds "That the exhaustion requirement is not satis-

fied because petitioner failed to 'relate' claim to due process or cite any

cases involving federal constitutional standards". In the case at bar, peti-

tioner clearly related his claim to due process where petitioner's argument

at ground one constitutes the denial of a fair trial. In sum, the court in

**Tribble vs. Gardner**, (1988) 88 DJ DAR §13494 holds; "**Government officials are**

**charged with knowledge of Constitutional developements including all available**

**decisional laws**"; **Broad vs. Sealaska Corp.**, (9th Cir. 1996) 85 F. 3d 422 (Under

Supremacy Clause, federal law preempts state law either by express provision,

**by implication,** or by conflict between federal and state law.) The respondent's

answer to petitioner's ground one, referring to exhaustion is misplaced and

merely an attempt to downplay the California Court Of Appeal's failure to

adhere to it's own law(s) that it ruled on in **People vs. Williams**, (2d Crim.

§B196202, 2007 DJ DAR §16724) where it stated "Before a trial court judge which

is contemplating a biased or prejudicial comment .... it should perhaps pause,

reflect, and then articulate a candid but measured response, and that the

appearance of justice is vitally important to the administration of justice

and we counsel judicial restraint in the future." Because the judge made the

comment that petitioner was a con-man, petitioner felt that he was not going

to get a fair trial in that courtroom regardless of the validness of his claim

that he was charged with displaying, cause and permit to be displayed **and**

possess a false drivers license with the intent to commit a forgery and

3.



petitioner's original intent to proceed to trial and prove to the jury that petitioner did not display the drivers license(es) to anyone as charged, see Exhibit "A". Therefore, the respondent's reference to the Penal Code Section §470(b) in asserting that it states "displaying OR possessing" is not the case because as Exhibit "A" reflects, petitioner understood he was defending himself against the "Displaying AND Possessing" charges which formulated his desire to go to trial until the judge made that comment assuring petitioner would not receive a fair trial in that judge's courtroom, see Edwards vs. Balisok, 117 S. Ct. 1584 which holds "Defendant tried by a partial judge is entitled to have his sentence set aside, no matter how strong the evidence against him, Fn. 1/, finally, the respondent's position regarding exhaustion on petitioner's argument one must fail because respondent's reference to the court in Castillo vs. McFadden, Supra., supports petitioner in that it states "an exhaustion requirement is not satisfied unless petitioner can relate claim to Due Process", compare the court in McFadden to the ruling in Liljerberg vs. Health Services Corp., (1988) 486 U.S. 847 which holds: "Right To A Fair Trial Is The Basic Requirement Of DUE PROCESS And Includes The Right Of Unbiased Judge", hence, reversal is required as a matter of law, respectively.

//
//
//
//
//
//

Fn. 1/

     Petitioner actually is innocent of any wrongdoing because he was only involved to set-up a bust for the Sheriff detective Mr. O'Sullivan who contacted the District Attorney and told him that the investigation was ongoing, and that he had busted Lamar and his brother who in turn agreed to give him the main guy.

4.

EXHIBIT

<u>ARGUMENT</u>

**2.**

<u>PETITIONER SUFFERED INEFFECTIVE
ASSISTANCE OF COUNSEL:</u>

The respondent states that because petitioner 'misunderstood' the statute under which he was charged ...... coupled with petitioner's "failure to explain how counsel's alleged poor performance affected the voluntariness of petitioner's plea", that petitioner is precluded relief according to the AEDPA.

In contrast, petitioner has attached the 'felony complaint' that he was given outlining the charges that petitioner had to defend himself against, and on page 2, it clearly states that:

> "On or about January 12, 2008, in the County of Los Angeles, the crime of POSSESSION OF FORGED DRIVER'S LICENSE, in violation of PENAL CODE SECTION 470b, a Felony, was committed by WEBSTER SALASKER LUCAS, who did unlawfully display, cause and permit to be displayed AND possess a driver's license and identification card of the type enumerated in Penal Code Section 470a with the intent that said document be used to facilitate the commission of a forgery."

This Felony Complaint form petitioner received was issued by the Superior Court Of The State Of California for the County Of Los Angeles filed January 15, 2008 in Case No. GA072071 and it was this particular form that identified the charges that petitioner would be tried and there was not an Amended Complaint filed with the information the respondent provides, therefore, petitioner in fact was charged with DISPLAYING AND POSSESSING a driver's license with intent to use said document to facilitate the commission of a forgery, see <u>In Re Marquez</u>, (1992) 1 Cal. 4th 584 requiring resentencing; see also <u>Federal Rules Of Criminal Procedure Rule §7(c)(1)</u> which requires that an indictment (Felony Com-

5.



plaint) be a "plain, concise, and definite written statement of the essential facts constituting the offense(s) charged, **United States vs. Rodriguez**, (9th Cir. 2004) 360 F. 3d 949, 958-59 holding "An indictment need only contain those facts and elements of the alleged offense necessary to 'inform the accused of the charge so that he or she may prepare a defense!'". Hence, petitioner was preparing to defend himself against the charges set out in the Felony Complaint and or indictment he received from his counsel and counsel knew that petitioner was faced with charges of DISPLAYING AND POSSESSION of the license, **Fn. 2/** and told petitioner, (when petitioner asked counsel how would he defend him in a trial, **"You're Guilty"**), this, coupled with the fact that counsel informed the petitioner that he was "uncomfortable with his case because it involved petitioner giving information to the Sheriff detective", and counsel informing the petitioner that the judge pre-judged petitioner as a CON-MAN ... these factors weighed heavily on petitioner in his decision to go ahead and take the deal or face a judge who made no secret of her bias against petitioner and represented by a public defender who expressed personal issues against 'snitches' and a refusal to discuss, much less defend petitioner in a jury trial against charges that could have resulted in an aquittal, i.e., counsel could have demonstrated to a jury panel that petitioner was not guilty of DISPLAYING the license as he was charged with in the information, and as far as being in possession of the license(es) .... counsel could have subpoenaed the Sheriff detective Mr. O'Sullivan of Santa Clarita Sheriff's station, phone no. (323) 219-3095 to testify at petitioner's trial in reference to why petitioner possessed the driver's licenses; as petitioner was providing information to law enforcement and was

---

**Fn. 2/**
      Only one license was a real person, (Jorge Morales), the other two Earl Hoy and Larry Smith were names made-up by petitioner to avoid detection of providing law enforcement with information and on Jorge Morales' license, petitioner intentionally mis-spelled the city of Lake View Terrace making it Lake View Torrance, California which would have not worked if attempted to be used. In fact, non of the licenses were usable.

EXHIBIT

getting licenses with petitioner's face on them to avoid detection by the
guys involved in the identity theft ring, and detective O'Sullivan could have
provided the jury with information that petitioner actually assisted him in
cracking a large identity theft ring in that one of the arrestees was caught
with about thirty-five or so credit cards and an array of other information
including information on the ring-leader who was printing the credit cards
and putting money on the magnetic strips on the back of the cards. Had the
petitioner's counsel effectively represented petitioner, petitioner would
not have been convicted, but thanked for providing the information that caused
several criminals to be arrested and prevented from operating their criminal
operation between New York and California. Counsel could have equally proved
that David Gomez (co-defendant) was lying to law enforcement from the begining
and all through the reports he provided, e.g., David Gomez lied about meeting
petitioner in Glendale and the female Gomez spoke of who drove a black Mer-
cedes was a nurse that met petitioner in Glendale to give petitioner a folder
containing legal papers relevant to a civil complaint petitioner assisted her
in filing (a slip and fall at the PASEO MALL in Pasadena), when the truth is,
petitioner was picked-up by Gomez and petitioner stayed with Gomez until they
(petitioner and Gomez) were subsequently arrested. Gomez told store security
a lie that petitioner drove a blue cadillac to the store and it was parked in
store parking-lot, then Gomez lied about petitioner black-mailing him in
threatening to tell Gomez's wife about an affair he was having, thruth is,
Mrs. Gomez had know of Jenny for three months preceeding this incident and
Mrs. Gomez is a christian who would have testified accordingly, and Gomez
lied about not taking items home with him at the end of the day, Mrs. Gomez
would have also proven this fact in that her sons received TV's, clothes as
well as her clothes also and Gomez's jewelry, clothes, appliances, Etc.. It
was all lies Gomez told officers including his involvement with one of the



main guys (Larmar) who Gomez lied saying Larmar only gave him gas money to get back home in San Bernardino, actually Larmar divided the items with Gomez every time after .."the end of the day". Gomez is petitioner's nephew and has known petitioner 'all his life' and equally knows that petitioner has a prior conviction for Identity Theft and used that knowledge to his advantage when he was arrested by lying and blaming petitioner when Gomez knew it was others he was working in conjunction with in the ring. Counsel for petitioner could have contested the information contained in the police reports provided by Gomez and ultimately deemed said information hearsay. Counsel's failure to investigate and present evidence of third party's (Gomez's) culpability was deficient representation, In Re Hardy, (2007) 41 Cal. 4th 977; People vs. Bautista, (2004) 115 Cal. App. 4th 229; People vs. Pope, (1979) 23 Cal. 3d 412. In the case at bar, petitioner relies on the court in Ortiz vs. Stewart, (9th Cir. 1998) 149 F. 3d 923, 934 which holds; "When the petitioner alleges "Specific Facts which, if true, would entitle him to relief and the truth of those facts cannot be determined from the record, an evidentiary hearing may be appropriate". Here, petitioner is certain that had respondent contacted the petitioner's public defender (Mr. Robert Takasugi) and interviewed him regarding why he felt so strongly negative towards petitioner's involvement with law enforcement and ask counsel why he failed to motion the court for a change of venue based on the judge's prejudicial comment toward petitioner calling him a con-man and finally ask counsel why he failed to attend the sentencing hearing especially when counsel knew petitioner was promised to speak at sentencing during the prosecutor's taking of the plea; the respondent claims he could not find this promise in the record, and petitioner begs to differ with that assessment in that petitioner saw that there was a court reporter working during the time of the taking of the plea; finally, the respondent could have asked counsel if

8.



counsel was present during sentencing, would counsel have protected petitioner's promised right to speak, knowing that the prosecutor failed to state or indicate on the record while taking the plea, whether the sentence was to be served at 50% or at 80%. Petitioner was under the impression that the prosecutor did this intentionally in order to possibly apply the 50% credit earning statute based on petitioner explaining his role in merely involving himself in the crime to break up an identity theft ring and refer to the detective Mr. O'Sullivan to support these facts. The court in **People vs. Wilson**, (1992) 3 Cal. 4th 926, 936 ruled; "In general, it is inappropriate for an appellate court to speculate as to the existence or non-existence of a tactical basis for the attorney's challenged acts or omissions .... a claim of ineffective assistance of counsel is more appropriately made in a Habeas Corpus proceeding, in which the attorney has the opportunity to explain the reasons for his/ her conduct." Hence, both prongs of the **Strickland**, Supra. test have been met, in that **(1)** counsel's performance was deficient and **(2)** said deficient performane prejudiced the petitioner and without the deficient performance, there would have been a more favorable outcome of the proceeding(s), therefore petitioner reversal is mandated, **United States vs. Morrison**, (1981) 449 U.S. 361, respectively.

//
//
//
//
//
//
//

9.

EXHIBIT

<u>ARGUMENT</u>

3.

### PETITIONER SHOULD BE GIVEN THE OPPORTUNITY TO WITHDRAW HIS PLEA:

The respondent conceeds this ground by his failure to answer to it as ordered to do so by this court. Reaching the merits in any event, since the petitioner's arguments one and two are deserving of reversal, petitioner respectfully asks of this court to issue and order directing the respondent to remand for the allotment of petitioner to withdraw his plea in that arguments one and two, without spilling needless ink, 'speak for themselves',i.e., the petitioner clearly demonstrates therein that his plea was entered into as a result of "factors that demonstrate over-reaching", <u>People vs. Osorio</u>, (1987) 194 Cal. App. 3d 183; <u>Brown vs. Poole</u>, (9th Cir. 2003) 337 F. 3d 1155, 1159-60 which holds; "Desputed terms part of plea agreement because defendant reasonably understood prosecutor's promises as part of bargain .... 'promises prompted acceptance of agreement and ambiguities are construed against the government", <u>Buckley vs. Terhune</u>, (9th Cir. 2006) 441 F. 3d 688. In sum, "The party asserting breach bears the burden of proving the underlying facts establishing a breach", <u>United States vs. Laday</u>, (5th Cir. 1995) 56 F. 3d 24, 26; <u>United States vs. Packwood</u>, (9th Cir. 1988) 848 F. 2d 1009, 1011, hence, reversal is required as a matter of law, respectfully.

//
//
//
//
//
//

EXHIBIT

## C O N C L U S I O N

Based on the foregoing, petitioner fervently prays that this honorable court grant the instant petition and issue an order consistent with the court's decision(s). Alternatively, the court is asked to order an evidentiary hearing.

//

//

//

//

//

//

//

//

DATED: September 16, 2009

//

//

//

//

//

//

//

//

Respectfully Submitted,

Petitioner In Pro Per

11.



## DECLARATION OF WEBSTER SALASKER LUCAS

      I, Webster S. Lucas, hereby make the instant declaration in good faith and under the penalty of perjury, and will submit to a lie detector test as to the following and all allegations contained within the instant petition for writ of Habeas Corpus:

      "Initially, I was working with detective O'Sullivan of Santa Clarita Sheriff station cell phone No. (323) 219-3095 in providing information regarding an identity theft ring operating in California and New York with it's base of of operations located in the San Fernando Valley. I knew of my nephew Gomez (co-defendant) and a Lamar and his brother known as "Chic" and yet another major participant in the West Valley. I was gathering information and documents to show detective O'Sullivan. On January 10, 2008, petitioner called detective O'Sullivan and was unable to reach him so petitioner left a message, and on Friday, January 11, 2008, detective O'Sullivan returned the call stating he was very busy working on a matter and would get on top of my tip on Monday, January 14, 2008. I told detective O'Sullivan that I would gather information and documents, if possible, and see him on Monday; that's when I called the co-defendant Gomez back telling him we can go on Saturday, January 12, 2008.

      Gomez came to pick me up from my apartment in Van Nuys and I rode with him to a location in Glendale to meet with a female name Vivette who met with me and gave me a manilla envelope containing legal material. From there Gomez and I went to different locations while he attempted to open credit account(s).

      We were ultimately arrested and Gomez began an array of lies to attempt to clear himself (by any means possible). While in court, my attorney Mr. Takasugi initially stated or rather expressed his uncomfortability with me being



## DECLARATION OF WEBSTER SALASKER LUCAS Continued

involved with law enforcement, and said how could I "go through life as a snitch" this attitude was the begining of my feeling like I had no attorney at all, as counsel was uncomfortable with me and made it clear on several ocassions, and once I received my copy of the Felony Complaint (indictment), I asked counsel how would he defend me at a jury trial, and he stated "You're guilty", and I said, may be, but not as charged. I was not feeling good about counsel being in my corner; then, sometime later, counsel came in the holding cell and told me that "This judge feels that you are a con-man" and that's when I knew that the cards were stacked against me and I'd better do whatever they wanted me to do including taking a deal. I would have rather went to trial so I could explain to the jury, but my counsel, said "You're guilty", and this along with my know-ledge that counsel did not like 'snitches' and was going to allow my case to be heard by a judge who made no secret of her bias against me, these factors were central to my decision to take the deal; which is why when I was asked by the prosecutor, have I had time to talk to my attorney prior to accepting the deal, I said, "To An Extent". At that point, I was still feeling forced to take the deal based on my experiences with counsel and the judge, but knew that I was not going to receive a fair trial if I went against the deal, and proceeded to trial by jury.

Finally, when I submitted my Notice of appeal, the superior court played games with it and after stamping filed and denied on it, the court remained to say my appeal was untimely, I was sentenced on April 29, 2008, and I filed my notice of appeal on or about May 30, 2008 , which denied by judge Ms. Croft but was later ruled an untimely appeal; that's when I proceeded to file the Habeas Corpus. I say this to show that judge Ms. Croft still appeared to be biased against me, (after sentencing, and on appeal.)

Respectfully Submitted,

Page two of two

E X H I B I T   "A"



Exhibit "A"

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>01  DAVID VIDAL GOMEZ  (05/02/1978), and<br>02  WEBSTER SALASKER LUCAS  (02/13/1955)<br>Defendant(s). | CASE NO. GA072071<br><br><br>*FELONY COMPLAINT* |

The undersigned is informed and believes that:

## COUNT 1

On or about January 12, 2008, in the County of Los Angeles, the crime of SECOND DEGREE COMMERCIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by DAVID VIDAL GOMEZ, who did enter a commercial building occupied by TARGET with the intent to commit larceny and any felony.

\* \* \* \* \*

## COUNT 2

On or about January 12, 2008, in the County of Los Angeles, the crime of POSSESSION OF FORGED DRIVER'S LICENSE, in violation of PENAL CODE SECTION 470b, a Felony, was committed by DAVID VIDAL GOMEZ, who did unlawfully display, cause and permit to be displayed and possess a driver's license and identification card of the type enumerated in Penal Code Section 470a with the intent that said document be used to facilitate the commission of a forgery.

\* \* \* \* \*

EXHIBIT-A

EXHIBIT

Case No. GA072071

COUNT 3

On or about January 12, 2008, in the County of Los Angeles, the crime of POSSESSION OF FORGED DRIVER'S LICENSE, in violation of PENAL CODE SECTION 470b, a Felony, was committed by WEBSTER SALASKER LUCAS, who did unlawfully display, cause and permit to be displayed and possess a driver's license and identification card of the type enumerated in Penal Code Section 470a with the intent that said document be used to facilitate the commission of a forgery.

\* \* \* \* \*

COUNT 4

On or about January 12, 2008, in the County of Los Angeles, the crime of POSSESSION OF FORGED DRIVER'S LICENSE, in violation of PENAL CODE SECTION 470b, a Felony, was committed by WEBSTER SALASKER LUCAS, who did unlawfully display, cause and permit to be displayed and possess a driver's license and identification card of the type enumerated in Penal Code Section 470a with the intent that said document be used to facilitate the commission of a forgery.

\* \* \* \* \*

COUNT 5

On or about January 12, 2008, in the County of Los Angeles, the crime of POSSESSION OF FORGED DRIVER'S LICENSE, in violation of PENAL CODE SECTION 470b, a Felony, was committed by WEBSTER SALASKER LUCAS, who did unlawfully display, cause and permit to be displayed and possess a driver's license and identification card of the type enumerated in Penal Code Section 470a with the intent that said document be used to facilitate the commission of a forgery.

\* \* \* \* \*



***** PROOF OF SERVICE *****

I, **Webster Salasker Lucas**, certify and declare that I am over the age of (18) years, a party to the within action and a citizen of the United States.

I served the following document(s), **PETITIONER'S REPLY TO RESPONDENT'S ANSWER**, upon the parties listed below by placing sealed envelopes in the secured institutional mail box here at Norco, California as follows:

```
          Attorney General, State Of California
     **   Mr. David Zarmi, Deputy Att. General
          300 South Spring Street, Suite #1702
          Los Angeles, California 90013
```

I, **Webster Salasker Lucas**, Swear Under The Penalty Of Perjury That The Foregoing Is True And Correct.

EXECUTED AND DATED THIS 16th DAY OF SEPTEMBER, 2009.

D E C L A R A N T /

EXHIBIT